Lorenza D. Smith appeals, pursuant to § 16-24B-5(a), Ala. Code 1975 (a part of the Teacher Accountability Act of 2000), from a judgment of the Bullock Circuit Court affirming a decision by the Bullock County Board of Education ("the Board") to dismiss him from his employment as the principal of Bullock County High School. The Board's decision was based on a determination that Smith had failed to prevent the loss or theft of $25,662.25 in school funds. We affirm.
Smith was hired as a contract principal on July 1, 2000.[1] Upon assuming his *Page 940 
duties in the summer of 2000, Smith learned that the school athletic fund contained only $800, had a past-due bill of $352, and would have to pay $1,106 in catastrophic insurance premiums before the football team could take the field when school began. Smith met with Lionel Garnier, the interim superintendent of the Board, who agreed to borrow money to allow the school to field a football team. Smith informed Garnier that he had no experience with the financial aspects of running a school. Garnier advised Smith that most of the discretionary funds the school had to spend would come from football and basketball gate receipts. Garnier cautioned Smith to implement a "good check and balance system on his athletic games," which included having honest people at the gate, numbered tickets to ball games, check-up sheets to document the tickets sold and money received, and night deposits after athletic events. During the 2000-2001 athletic season, the school paid off the loan and had no problems with the athletic fund.
In 2003, Tammy Shelley, an accounts examiner with the State Examiners of Public Accounts, performed an audit of Bullock County High School covering the 18-month period from August 1, 2001, through February 28, 2003. That audit disclosed that gate receipts from 13 athletic events had not been deposited and that check-up sheets corresponding to ticket sales for 11 athletic events were missing. Shelley determined that $22,435.00 in ticket sales and $3,227.25 in teacher receipts, for a total of $25,662.25, were missing from the school account.
The school bookkeeper confessed to embezzling $4,600 of that amount; the balance remains unaccounted for. The Board demanded that Smith repay the missing funds, and, when Smith refused, the Board voted to terminate his employment, citing his alleged neglect of duty, lack of cooperation, insubordination, and incompetency as grounds.
Following an ore tenus proceeding, the circuit judge entered a judgment that states the following findings:
 "That the Bullock County Board of Education has shown, by a preponderance of the evidence, that the cancellation of Principal Lorenza Smith's contract was solely for cause, as alleged in the `Notice of Intent to Cancel Contract' letter given to Smith by the Bullock County Board of Education on November 5, 2003. No evidence was presented that the Board's cancellation was motivated by personal or political reasons.
 "The Court specifically finds that no evidence whatsoever was presented that Principal Smith was implicated in the theft of any gate receipts or bank deposits, or that he personally benefitted from the missing $25,000.00 during the audit period. However, under Board policy and state law, Mr. Smith, as Principal of Bullock County High School, is held accountable for the thirteen (13) deposits not being made to the school's bank account in an eighteen-month period."
Section 16-24B-5(b) provides that "[t]he decision of the circuit judge . . . shall be affirmed on appeal unless the Court of Civil Appeals finds the decision to be against the great weight of the evidence."
Smith contends that the Board failed to meet its burden of proving the charges against him because, he alleges, there was no evidence of any act of misfeasance, malfeasance, or nonfeasance on his *Page 941 
part. He argues that he followed the directives of his supervisor, interim superintendent Garnier, by implementing the use of "check-up sheets," and, he says, there was no requirement (1) that he actually review, monitor, or sign the check-up sheets or (2) that he ascertain that the gate receipts from athletic events were actually deposited. He maintains that the Board's evidence established only that he was responsible for the missing funds by virtue of his position, i.e., as the school bookkeeper's supervisor. He argues that he should not be deemed a guarantor of the bookkeeper's honesty and that, absent notice of the bookkeeper's criminal proclivities, he should not be held responsible for her criminal acts.
While Smith's argument might have some validity with respect to the tort liability of a premises owner for the unforeseen criminal acts of a third party, cf. Carroll v. Shoney's, Inc.,775 So.2d 753 (Ala. 2000), it has no validity with respect to the right of Smith's employer to dismiss him for cause based upon §16-24B-3(e)(1), Ala. Code 1975. That section provides:
 "An employing board may cancel the contract of a contract principal for cause at any time for any of the following reasons:
 "a. Immorality.
 "b. Insubordination.
 "c. Neglect of duty.
 "d. Conviction of a felony or a crime involving moral turpitude.
 "e. Failure to fulfill the duties and responsibilities imposed upon principals by this code.
 "f. Willful failure to comply with board policy.
 "g. A justifiable decrease in the number of positions due to decreased enrollment or decreased funding.
 "h. Failure to maintain his or her certificate in a current status.
 "i. Other good and just cause.
 "j. Incompetency.
 "k. Failure to perform duties in a satisfactory manner."
We find Smith's argument that, having implemented the check-up-sheet procedure for ticket sales to athletic events, he had no further responsibility for continually monitoring that procedure disingenuous. Section 16-24B-4, Ala. Code 1975, states the following pertinent duties of a contract principal:
 "(a) Subject to the authority of the chief executive officer and the employing board, a . . . contract principal shall supervise the daily operation and management of personnel, finances, facilities and other matters of the school or campus for which the . . . contract principal is responsible. . . .
 "(b) A . . . contract principal shall observe all rules, policies, and procedures relative to the operation of the public schools as established by applicable law, rule, and standard of both the State Board of Education and the employing board."
(Emphasis added.) The legislature's use of the phrase "daily
operation and management of . . . finances" necessarily means that it intended for a contract principal to exercise ongoing supervisory responsibility in financial matters, not simply a one-time implementation function. The Board's policy specifically makes a principal personally responsible for the financial affairs, including any unaccounted-for funds, of the school. In 1989, the Board adopted a policy concerning "Local School Accounting and Reporting" that states, in pertinent part:
 "Financial Policies *Page 942 
 "1. The principal shall be responsible for the proper handling of all business affairs in the school. This includes the establishment of all bank depository accounts, savings accounts, receipt and disbursement of funds, budgeting and financial records and reports.
 "2. The school secretary/bookkeeper shall be responsible to the principal, and shall receive and account for all school funds in accordance with procedures prescribed by these policies.
 "3. . . . .
 "4. All money collected from students on school premises and all money collected at school-sponsored activities, on or off premises, shall be accounted for through the school accounting system.
 "5. . . . .
 "6. All money received in the name of the school should be deposited daily in a bank unless otherwise authorized by the Superintendent. All payments shall be made by check. The principal shall be personally responsible for any funds which cannot be accounted for that are not deposited on a daily basis."
(Emphasis added.) "`Neglect of duty' is defined as `a failure to do what one is required by law or contract to do.' Pratt v.Alabama State Tenure Commission, 394 So.2d 18, 21 (Ala.Civ.App. 1980), cert. denied, 394 So.2d 22 (Ala. 1981)." Alabama Ass'n ofSch. Bds. v. Walker, 492 So.2d 1013, 1017 (Ala. 1986).
We cannot hold that the Board's decision to dismiss Smith for neglect of duty, failure to fulfill his duty, or incompetence was against the great weight of the evidence. We therefore affirm the circuit court's judgment upholding the Board's decision. See §16-24B-5(b), Ala. Code 1975.
Smith's motion to strike a portion of the Board's brief on appeal is granted.
MOTION TO STRIKE GRANTED; AFFIRMED.
YATES, P.J., and THOMPSON, PITTMAN, and MURDOCK, JJ., concur.
[1] A contract principal is the chief administrator of a school, hired on or after July 1, 2000, see § 16-24B-2(1), Ala. Code 1975, who does not have tenure but who serves, after a probationary period, under a contract of up to three years, subject to termination for cause, see § 16-24B-3(a), Ala. Code 1975.